**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLIANCE OF ARTISTS AND<br>RECORDING COMPANIES, INC.,<br>700 North Fairfax Street<br>Alexandria, VA 22314,<br>on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CHRYSLER GROUP LLC<br>1000 Chrysler Drive<br>Auburn Hills, Michigan 48326,<br><br>MITSUBISHI ELECTRIC AUTOMOTIVE<br>AMERICA, INC.<br>4773 Bethany Road<br>Mason, Ohio 45040,<br><br>MITSUBISHI ELECTRIC US, INC.<br>5900-A Katella Avenue<br>Cypress, California 90630,<br><br>        Defendants. | Civil Action No. 1:14-cv-1920<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

The Alliance of Artists and Recording Companies, Inc. ("AARC" or "Plaintiff"), on behalf of itself and all others similarly situated, hereby alleges as follows for its Complaint against Chrysler Group LLC ("Chrysler"), and Mitsubishi Electric Automotive America, Inc. and Mitsubishi Electric US, Inc. (together "Mitsubishi") (collectively, "Defendants").

## NATURE OF THE CASE

1. Plaintiff brings this class action for damages and to enjoin Defendants from their violation of the Audio Home Recording Act of 1992, 17 U.S.C. §§ 1001 et seq. ("AHRA"), part of the Copyright Law of the United States, 17 U.S.C. §§ 101 et seq.  The AHRA is a comprehensive statutory scheme enacted in 1992 to regulate the manufacture, importation, and distribution of digital audio recording devices.  Congress enacted the AHRA to ensure both that consumers would have access to digital audio copying technology and that artists and other copyright owners would be fairly compensated for the copying of their works.

2. Defendants are multi-billion dollar companies that manufacture, import, and/or distribute hundreds of thousands of products in the United States every year.  Defendants are also beneficiaries of the AHRA, which shields them from liability for copyright infringement for manufacturing, importing, and/or distributing certain recording devices; in return they must (a) incorporate certain copying control technology and (b) pay a modest royalty per device that is then distributed to musical artists and music copyright owners.  Nonetheless, Defendants have refused to comply with the AHRA and refused to pay the royalties that Congress has determined they owe for the recording devices they manufacture, import, and/or distribute—notwithstanding intensive efforts by the AARC going back at least two years to persuade Defendants to live up to their statutory obligations.  Defendants' intransigence has left the AARC with no choice but to file this lawsuit.

3. Defendants have violated and continue to violate the AHRA by manufacturing or importing and distributing digital audio recording devices without complying with the AHRA. Defendants distribute these devices either pre-installed in vehicles or intended for use in vehicles.  Defendants designed these devices for the express purpose of copying music CDs and

other digital musical recordings to a hard drive on the devices, and they market these devices emphasizing that copying function.  By doing so, Defendants violate the AHRA because Defendants (a) have not registered these devices with the U.S. Copyright Office; (b) have not paid royalties for these devices; and (c) have not incorporated the Serial Copy Management System or its functional equivalent in these devices, all of which are required by the AHRA.

4. These devices clearly fall within the scope of the AHRA.  Certain other manufacturers that distribute the same type of in-vehicle CD-copying devices acknowledge that such devices are subject to the AHRA.  These manufacturers submit to the Copyright Office the required royalty payments for their devices.  Defendants, in stark contrast, continue to manufacture, import, and/or distribute such devices without complying with any of the AHRA's requirements.

## JURISDICTION AND VENUE

5. This Court has exclusive subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendants.  Defendants' acts or omissions in the District of Columbia, including their failures to file notices and statements of account with the U.S. Copyright Office in the District of Columbia, and failures to pay royalties for these devices to the Copyright Office, as required by the AHRA and the Copyright Office, have injured Plaintiff and other members of the class.  *See* D.C. Code § 13-423(a)(3).  In addition, Defendants' acts or omissions outside the District of Columbia, including manufacturing or importing and distributing digital audio recording devices without complying with the requirements of the AHRA, have injured members of the class within the District of Columbia.  *See id.* § 13-423(a)(4). On information and belief, Defendants regularly do and

solicit business, engage in a persistent course of conduct, and/or derive substantial revenue from their goods that are used and/or consumed in the District of Columbia. *See id.* In addition, on information and belief, all Defendants transact business in the District of Columbia. *See id.* § 13-423(a)(1).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

8. Plaintiff Alliance of Artists and Recording Companies, Inc. ("AARC") is a not-for-profit organization incorporated in Pennsylvania and headquartered in Virginia. The AARC represents featured recording artists and sound recording copyright owners in the areas of home taping and private copy royalties and rental and lending royalties. The AARC was formed to collect and distribute royalties collected by the United States Copyright Office under the AHRA. The AARC is the sole administrator of AHRA royalties to featured recording artists and sound recording copyright owners in the United States. The AARC is an "interested copyright party" within the meaning of 17 U.S.C. §§ 1001(7)(D) and 1009, in that it is an association or other organization representing (i) featured recording artists who perform on sound recordings that have been distributed and (ii) the owners of, *inter alia*, exclusive rights to reproduce sound recordings of musical works that have been embodied in digital or analog musical recordings lawfully made and distributed. The AARC is the single largest "interested copyright party" under the AHRA; it represents the recipients of more than 60% of the AHRA royalties collected and distributed by the Copyright Office.

9. Defendant Chrysler Group LLC is a Delaware corporation with its principal place of business in Auburn Hills, Michigan.

10. Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.

11. Defendant Mitsubishi Electric US, Inc. is a Delaware corporation with its principal place of business in Cypress, California.

## FACTUAL AND LEGAL BACKGROUND

**Requirements of the Audio Home Recording Act of 1992**

12. The Audio Home Recording Act was enacted by Congress in 1992. The AHRA is the result of a compromise among representatives of the music and recording industries and the consumer electronics industry, and has greatly benefitted consumers of those industries' products. The compromise arose out of a recognition that then-nascent digital reproduction technologies might enable consumers to easily and perhaps unintentionally violate the copyrights of recording artists and record companies by enabling consumers to copy, and then recopy, digital musical recordings without a measurable loss in the quality of the recordings. Copyright owners and the consumer electronics industry disputed whether the distribution of these devices would expose their manufacturers to liability for contributory copyright infringement. As a result, each side faced uncertainty regarding the legal and economic consequences of distributing such technology.

13. The resulting compromise avoided high-stakes uncertainty and ensured that consumers could access these new technologies. In lieu of an inquiry into the extent that a given device did or did not facilitate copyright infringement, the parties adopted a set of clear and simple regulatory requirements for a discrete category of devices. The music and recording industries agreed to bar certain infringement suits against manufacturers, importers, and distributors of "digital audio recording devices" ("DARDs") and against consumers for

noncommercial use of such devices, in exchange for: (a) compensation in the form of royalty payments for each DARD distributed, and (b) a requirement that all such DARDs incorporate certain copying controls to prevent or impede "serial" copying.

14. The AHRA enacted the royalty payment requirement by prohibiting the importation and distribution, or manufacture and distribution, of any DARD without first filing a notice with the Register of Copyrights, depositing quarterly and annual statements of account, and making royalty payments.  17 U.S.C. § 1003.  Such filings and payments must be submitted to the Copyright Office in the District of Columbia.  *See, e.g.*, U.S. Copyright Office, Annual Statement of Account for Digital Audio Recording Products (Form DART/A) (June 2012), *available at* http://www.copyright.gov/forms/formdart-a.pdf.

15. The AHRA enacted the copying control requirement by prohibiting the importation, manufacture, or distribution of any DARD that does not conform to "the Serial Copy Management System" (the "SCMS") or its functional equivalent.  17 U.S.C. § 1002(a). The SCMS was developed as a common protocol for encoding two critical bits of information in each digital musical recording (e.g., a CD): (a) whether the recording is copyrighted; and (b) if it is copyrighted, whether the recording is an "original" or a "copy."  When a DARD makes a copy from a digital musical recording, it must conform to SCMS by encoding this copyright information in the new copy.

16. When copying an original recording, the DARD must mark the copy as a "copy" (rather than an original).

17. A DARD must recognize whether a recording is an original or a copy.

18. A DARD must never allow a user to copy from a "copy."

19.     Thus, the SCMS prevents "serial" copying—such as, for example, someone obtaining a burned copy of an original CD and copying the content of that burned CD to his or her music player's hard drive.

20.     The AHRA defines a DARD as "any machine or device of a type commonly distributed to individuals for use by individuals, whether or not included with or as part of some other machine or device, the digital recording function of which is designed or marketed for the primary purpose of, and that is capable of, making a digital audio copied recording for private use." 17 U.S.C. § 1001(3) (emphasis added).  Excluded from this definition are "professional model[s]" and devices "designed and marketed primarily for the creation of sound recordings resulting from the fixation of nonmusical sounds." *Id.*

21.     A "digital audio copied recording" (a "DACR") is defined by the AHRA as "a reproduction in a digital recording format of a digital musical recording, whether that reproduction is made directly from another digital musical recording or indirectly from a transmission." 17 U.S.C. § 1001(1) (emphasis added).

22.     A "digital musical recording" (a "DMR") is "a material object — (i) in which are fixed, in a digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds, if any, and (ii) from which the sounds and material can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 1001(5)(A).  Excluded from this definition are material objects in which the only fixed sounds are "spoken word recordings" and material objects "in which one or more computer programs are fixed"—except that a DMR "may contain statements or instructions constituting the fixed sounds and incidental material, and statements or instructions to be used directly or indirectly in order to bring about the perception, reproduction, or communication of

7

the fixed sounds and incidental material." *Id.* § 1001(5)(B). Music CDs are quintessential examples of DMRs.

23. The AHRA expressly empowers any "interested copyright party" injured by a violation of the AHRA to sue for injunctive relief and damages. 17 U.S.C. § 1009(a). Such damages are paid to the Copyright Office and shared by all interested copyright parties "as though such funds were royalty payments." *Id.* § 1009(e).

24. Defendants have violated and continue to violate the AHRA by manufacturing and distributing, or importing and distributing, DARDs (i) without registering the devices with the Copyright Office, (ii) without making the royalty payments required by the AHRA, and (iii) without ensuring that these DARDs conform to the SCMS or its functional equivalent.

**Chrysler and Mitsubishi**

25. Chrysler designs, manufactures, markets, and distributes automotive vehicles in the United States under the Chrysler, Jeep, Dodge, Ram and Fiat brands. For example, Chrysler operates a manufacturing plant in Sterling Heights, Michigan, where it assembles the Chrysler 200. Chrysler also manufactures several automobile models in Canada and Mexico for import into the United States.

26. Chrysler distributes its vehicles in all 50 states, including the Washington, D.C. metropolitan area. Among other things, Chrysler distributes vehicles for sale to District of Columbia residents.

27. Mitsubishi supplies Chrysler with devices that are installed in and distributed with Chrysler's vehicles. Mitsubishi regularly does and solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed, in the District of Columbia.

28.     Chrysler has previously offered and currently offers as a feature in many of its vehicles a device which records songs from CDs to the device's hard drive, often referred to as the "Media Center" (including the "MyGIG" and "Uconnect Media Center").

29.     Chrysler's Media Center with CD-recording capability is available on numerous models, including its Chrysler 200, Chrysler Town & Country, Jeep Compass, Jeep Patriot, Jeep Wrangler, Jeep Liberty, Jeep Grand Cherokee, Dodge Caliber, Dodge Avenger, Dodge Challenger, Dodge Caravan, Dodge Nitro, Dodge Durango, Ram 1500, and Ram 2500/3500.

30.     Chrysler has included "Media Center" devices with the ability to record songs from CDs in many models since as early as 2008. For example, the Media Center has been available in Chrysler vehicles since at least the 2008 model year (which began in 2007), including in the 2008 Chrysler Town & Country.

31.     Chrysler's Media Center is capable of making a digital audio copied recording for private use. The device allows songs to be recorded from a CD to a hard drive with several gigabytes of memory capacity. To copy an entire CD to the hard drive, an individual user need only insert a CD, open the user's music file, then touch the "Import Music Files" or "Add Music Files to HDD" key and select the "From Disc" option. The device includes a database that enables it to automatically identify the album name, artist name, song title, and genre for each copied song. Once a song has been recorded to the hard drive, the digital copy can be played back directly from the hard drive without any need for the CD.

32.     The Media Center's recording function is designed for the primary purpose of making digital audio copied recordings for private use.

33.     All other uses of the Media Center's recording function are minor or incidental to making digital audio copied recordings. For example, although the device's recording function

might also be capable of saving a small number of pictures, recording voice memos, or updating software or maps for a navigation feature, such other functions are insignificant relative to its ability to copy music CDs.

34. Moreover, a navigation/map feature is not even included on every device that has the music recording feature—certain models of the Chrysler 200 and Chrysler Town & Country, among others, allow users to select a Media Center device capable of copying CDs to a hard disk drive but without a navigation system.

35. Making digital audio copied recordings is the primary purpose for which the Media Center's recording function was designed.

36. The Media Center's recording function is also marketed for the primary purpose of making digital audio copied recordings for private use. For example, a Chrysler promotional website for the Media Center states that at least one device contains a 30-gigabyte hard drive, but discusses the capacity of the hard drive only in terms of the number of songs it can store ("6,700 song capacity"). Other marketing materials for the Media Center state that the device is capable of holding less than 30 photos or graphic files.

37. Chrysler's marketing materials treat all other uses of the Media Center's recording function as minor or insignificant relative to making digital audio copied recordings. Making digital audio copied recordings is marketed as the central purpose of the Media Center's recording function.

38. Chrysler's Media Center is a DARD.

39. Chrysler and/or its supplier Mitsubishi Electric manufactures Chrysler's Media Center devices in the United States and/or imports the Media Center devices into the United

States, and distributes those devices in the United States for ultimate transfer to consumers in the United States.

40. Neither Chrysler nor Mitsubishi has filed with the Register of Copyrights any notice or statement of account pursuant to the AHRA.

41. Neither Chrysler nor Mitsubishi has paid to the Register of Copyrights any royalties pursuant to the AHRA.

42. The Media Center device does not conform to the SCMS or its functional equivalent. It does not include copying controls that verify whether a digital musical recording is an "original" or a "copy," and it does not prevent copying from a "copy." Nor does the device record the copyright status of the copies it creates as required by the AHRA.

## CLASS ACTION ALLEGATIONS

43. The allegations set forth in paragraphs 1 through 42 are adopted and incorporated by reference as if fully set forth herein.

44. Pursuant to Rule 23(b)(1)(A), (b)(1)(B), and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class composed of itself and all other interested copyright parties. The class is defined as all "interested copyright parties," as defined by 17 U.S.C. § 1001(7) (the "Class").

45. The Class is so numerous that joinder of all members is impracticable. The Class contains tens of thousands of copyright owners and featured recording artists. These include all "featured recording artist[s] who perform[] on a sound recording that has been distributed," 17 U.S.C. § 1001(7)(C); all owners of an exclusive right to reproduce a sound recording of a musical work "that has been embodied in a digital musical recording or analog musical recording lawfully made under [Title 17] that has been distributed," 17 U.S.C. § 1001(7)(A); and all legal

or beneficial owners of, and all persons who control, a right to reproduce in a digital musical recording or analog musical recording such a musical work, 17 U.S.C. § 1001(7)(B).  The Class also contains all associations or other organizations that represent the foregoing persons or are engaged in licensing rights in musical works to music users on behalf of writers and publishers.  *Id.* § 1001(7)(D).

46.     Questions of law and fact are common to the Class.  Such common questions include:

    a.    Whether Chrysler's Media Center device is a DARD.

    b.    Whether Chrysler's Media Center device conforms to the SCMS or its functional equivalent.

    c.    Whether Chrysler and/or its supplier Mitsubishi manufactures Chrysler's Media Center devices in the United States and/or imports Chrysler's Media Center devices into the United States, and distributes those devices in the United States for ultimate transfer to consumers in the United States.

    d.    Whether Defendants have filed with the Register of Copyrights any notice or statement of account pursuant to the AHRA.

    e.    Whether Defendants have paid to the Register of Copyrights any royalties pursuant to the AHRA.

47.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff has no interests antagonistic to the claims of the Class.

48.     Plaintiff will vigorously, fairly, and adequately protect the interests of the Class. Plaintiff has retained competent counsel experienced in the prosecution of complex, class action, and copyright litigation.

49.     Given that the AHRA imposes a uniform standard of conduct on Defendants, separate actions against Defendants by individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their AHRA obligations.

50.     Separate actions by individual members of the Class would create a risk of inconsistent adjudications regarding Defendants' AHRA obligations that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

51.     Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive or declaratory relief is appropriate for the Class as a whole.

## COUNT I
## INJUNCTIVE RELIEF
### (Violation of 17 U.S.C. § 1003(a))

52.     The allegations set forth in paragraphs 1 through 51 are adopted and incorporated by reference as if fully set forth herein.

53.     Defendants import and distribute, or manufacture and distribute, DARDs without first filing the required notice with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

54.     Defendants import and distribute, or manufacture and distribute, DARDs without filing the required statements of account with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

13

55. Defendants import and distribute, or manufacture and distribute, DARDs without paying the required royalties to the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

56. Pursuant to 17 U.S.C. § 1009(c)(1), Plaintiff seeks a permanent injunction to prevent and restrain Defendants from distributing the devices described herein and any other DARDs without paying the royalties and filing the notices and statements of account required by the AHRA.

## COUNT II
## DAMAGES
### (Violation of 17 U.S.C. § 1003(a))

57. The allegations set forth in paragraphs 1 through 56 are adopted and incorporated by reference as if fully set forth herein.

58. Defendants have imported and distributed, or manufactured and distributed, and continue to import and distribute, or manufacture and distribute, DARDs without first filing the required notice with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

59. Defendants have imported and distributed, or manufactured and distributed, and continue to import and distribute, or manufacture and distribute, DARDs without filing the required statements of account with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

60. Defendants have imported and distributed, or manufactured and distributed, and continue to import and distribute, or manufacture and distribute, DARDs without paying the required royalties to the Register of Copyrights, in violation of 17 U.S.C. § 1003(a).

61. Pursuant to 17 U.S.C. § 1009(c)(2) and (d)(1)(A), Plaintiff seeks actual damages equal to the unpaid royalties on the DARDs imported and distributed, or manufactured and distributed, by any Defendant during the three years immediately prior to the filing of this

Complaint and from the date of filing until the date of judgment, plus an additional amount equal to 50 percent of the actual damages, all to be paid to the Register of Copyrights.

### COUNT III
### INJUNCTIVE RELIEF
### (Violation of 17 U.S.C. § 1002(a))

62. The allegations set forth in paragraphs 1 through 61 are adopted and incorporated by reference as if fully set forth herein.

63. Defendants import, manufacture, or distribute DARDs that do not conform to the SCMS, do not conform to a system that has the same functional characteristics as the SCMS, and do not conform to any other system certified by the Secretary of Commerce as prohibiting unauthorized serial copying, in violation of 17 U.S.C. § 1002(a).

64. Pursuant to 17 U.S.C. § 1009(c)(1), Plaintiff seeks a permanent injunction to prevent and restrain Defendants from distributing the devices described herein and any other DARDs that do not conform to the SCMS or its functional equivalent as required by the AHRA.

### COUNT IV
### DAMAGES
### (Violation of 17 U.S.C. § 1002(a))

65. The allegations set forth in paragraphs 1 through 64 are adopted and incorporated by reference as if fully set forth herein.

66. Defendants have imported, manufactured, or distributed DARDs that do not conform to the SCMS, do not conform to a system that has the same functional characteristics as the SCMS, and do not conform to any other system certified by the Secretary of Commerce as prohibiting unauthorized serial copying, in violation of 17 U.S.C. § 1002(a).

67. Pursuant to 17 U.S.C. § 1009(c)(2) and (d)(1)(B)(i), Plaintiff seeks statutory damages equal to $2,500 per DARD manufactured, imported, or distributed by any Defendants

during the three years immediately prior to the filing of this Complaint and from the date of filing until the date of judgment, to be paid to the Register of Copyrights.

## COUNT V
### DECLARATORY RELIEF
**(Violation of 17 U.S.C. §§ 1002 and 1003)**

68. The allegations set forth in paragraphs 1 through 67 are adopted and incorporated by reference as if fully set forth herein.

69. An actual, justiciable controversy exists between Plaintiff and Defendants.

70. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration as to the following:

   a. that Defendants have imported, manufactured, and/or distributed DARDs;

   b. that Defendants continue to import, manufacture, and/or distribute DARDs;

   c. that Defendants have not filed the required notice with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a);

   d. that Defendants have not filed the required statements of account with the Register of Copyrights, in violation of 17 U.S.C. § 1003(a);

   e. that Defendants have not paid the required royalties to the Register of Copyrights, in violation of 17 U.S.C. § 1003(a);

   f. that Defendants have imported, manufactured, and/or distributed DARDs that do not conform to the SCMS, do not conform to a system that has the same functional characteristics as the SCMS, and do not conform to any other system certified by the Secretary of Commerce as prohibiting unauthorized serial copying, in violation of 17 U.S.C. § 1002(a); and

   g. that Defendants must comply with the AHRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment and relief as follows:

1.      For an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2) on behalf of the Class; designating Plaintiff as Class representative; and appointing the undersigned counsel as Class counsel;

2.      For a permanent injunction enjoining Defendants and their officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert or participation with each or any of them, from directly or indirectly violating the AHRA, including by (i) importing, manufacturing, advertising for sale, or distributing Chrysler's Media Center device, and any other devices subject to the AHRA without paying the royalties or filing the notices or statements of account required by the AHRA, or by (ii) importing, manufacturing, or distributing Chrysler's Media Center device, and any other devices subject to the AHRA that do not conform to the SCMS or its functional equivalent as required by the AHRA;

3.      For actual damages equal to the unpaid royalties on the DARDs imported and distributed, or manufactured and distributed, by any Defendant during the three years immediately prior to the filing of this Complaint and from the date of filing until the date of judgment, to be paid to the Register of Copyrights;

4.      For additional damages equal to 50 percent of the actual damages, to be paid to the Register of Copyrights;

5.      For statutory damages equal to $2,500 per DARD manufactured, imported, or distributed by any Defendant during the three years immediately prior to the filing of this

Complaint and from the date of filing until the date of judgment, to be paid to the Register of Copyrights;

      6.      For pre- and post-judgment interest;

      7.      For a declaration that Defendants' manufacture, importation, and/or distribution of DARDs, including Chrysler's Media Center, violates the AHRA;

      8.      For costs and attorneys' fees; and

      9.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

Respectfully submitted,

Dated: November 14, 2014           By:  /s/ Richard B. Dagen

Richard B. Dagen (DC Bar No. 388115)
Michael D. Bednarek (DC Bar No. 414355)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 912-4700
Facsimile: (202) 912-4701

*Counsel for Plaintiff Alliance of Artists and Recording Companies, Inc.*